IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, on behalf of LEHMAN BROTHERS HOLDINGS, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>THOMAS KOHLER and DIANE KIMSEU KOHLER,<br><br>    Defendants.<br>_____/ | No. C 11-0439 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' MOTION TO DISMISS (Docket Nos. 12 and 17) |

    Plaintiff Aetna Life Insurance Company, on behalf of Lehman Brothers Holdings, Inc., brings a claim under section 502(a)(3) of the Employment Retirement Insurance Security Act (ERISA), 29 U.S.C. § 1132(a)(3), to recover funds from Defendants Thomas Kohler and Diane Kimeseu Kohler.  Defendants move to dismiss Aetna's complaint.  Aetna opposes the motion and moves to strike portions of Defendants' motion to dismiss.  Defendants oppose Aetna's motion to strike.  The motions will be decided on the papers.  Having considered the papers submitted by the parties, the Court DENIES Defendants' motion and DENIES as moot Aetna's motion to strike.

BACKGROUND

    Aetna is the administrator and fiduciary of the Lehman Brothers Holdings, Inc. Benefits Plan, which is a self-funded plan governed by ERISA.  Defendants are husband and wife.  Ms. Kimseu Kohler was employed by Lehman Brothers and was a participant under the Plan.  Mr. Kohler was a covered dependent.  As relevant to Aetna's claim to recover funds from Defendants, the Summary Plan

Description (SPD) for the Plan provided,

Subrogation
Immediately upon paying or providing any benefits under this plan, the plan shall be subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to a Covered Person's injury, illness, or condition to the full extent of benefits provided or to be provided by the plan.

Reimbursement
In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury, illness, or condition, the plan has a right to receive from, and be reimbursed by, the Covered Person for all amounts this plan has paid and will pay as a result of that injury, illness, or condition, up to and including the full amount the Covered Person receives from any Responsible Party.

Constructive Trust
By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person agrees that if he or she receives any payment from any Responsible Party as a result of an injury, illness, or condition, he or she will serve as a constructive trustee over the funds that constitutes such payment.  Failure to hold such funds in trust will be deemed a breach of the Covered Person's fiduciary duty to the plan.

Lien Rights
Further, the plan will automatically have a lien to the extent of benefits paid by the plan for the treatment of the illness, injury, or condition for which the Responsible Party is liable.  The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise related to the treatment for any illness, injury, or condition for which the plan paid benefits.  The lien may be enforced against any party who possesses the funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the Covered Person, the Covered Person's representative or agent; Responsible Party; Responsible Party's insurer, representative, or agent; and/or any other source possessing funds representing the amount of the benefits paid by the plan.

First-Priority Claim
By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person acknowledges that this plan's recovery rights are a first priority claim against all Responsible Parties and are to be paid to the plan before any other claim for the Covered Person's damages.  This plan shall be entitled to full

> reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained. The plan is not required to participate in or pay court costs or attorneys fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.
>
> Cooperation
> The Covered Person shall fully cooperate with the plan's efforts to recover its benefits paid. It is the duty of the Covered Person to notify the plan within 30 days of the date when any notice is given to any party, including an insurance company or attorney, of the Covered Person's intention to pursue or investigate a claim to recover damages or obtain compensation due to injury, illness, or condition sustained by the Covered Person. The Covered Person and his or her agents shall provide all information requested by the plan, the Claims Administrator or its representative including, but not limited to, completing and submitting any applications or other forms or statements as the plan may reasonably request. Failure to provide this information may result in the termination of health benefits for the Covered Person or the institution of court proceedings against the Covered Person.
>
> The Covered Person shall do nothing to prejudice the plan's subrogation or recovery interest or to prejudice the plan's ability to enforce the terms of this plan provision. This includes, but is not limited to, refraining from making any settlement or recovery that attempts to reduce or exclude the full cost of all benefits provided by the plan.

Compl., Ex. A, at 40-41.

The following allegations are contained in Aetna's complaint, unless otherwise stated.

On July 4, 2008, Mr. Kohler was injured in a traffic accident involving Lise Warren. The Plan paid out $147,986.76 to cover Mr. Kohler's medical expenses.

In November 2008, The Rawlings Company, LLC, on behalf of Aetna, notified Mr. Kohler of his duty to inform Aetna of any claim he intended to bring based on the July 2008 accident. Rawlings also informed Mr. Kohler of Aetna's "right to reimbursement from any settlement or other payment received as a result of the

accident." Compl. ¶ 15. Defendants did not respond to this letter.

In June 2009, Rawlings again contacted Mr. Kohler, seeking information about whether he had brought any claim regarding the July 2008 accident and whether he had retained an attorney. Defendants did not respond, notwithstanding that they apparently had filed a complaint against Ms. Warren in San Francisco County Superior Court on June 24, 2009.[1]  See generally Kohler v. Warren, Case No. CGC-09-489784 (S.F. Super. Ct.).  On September 24, 2009, Mercury Insurance Company, Ms. Warren's insurer, informed Rawlings that The Dolan Law Firm was representing Mr. Kohler.  The Dolan Law Firm serves as Defendants' counsel in this case.

On or about September 30, 2009, Rawlings informed Defendants that Aetna had a lien for medical benefits paid on behalf of Mr. Dolan on funds that may be obtained through a settlement with Ms. Warren and her insurer.  On December 9, 2009, Defendants responded, asking that Aetna withdraw its lien because Ms. Warren had insufficient policy coverage and personal assets to make Mr. Kohler whole.  After receiving a letter from Rawlings asserting Aetna's right to know of any settlement, Defendants responded by reiterating their belief that the Plan could not recover any amount from Mr. Kohler.

On June 28, 2010, Defendants informed Rawlings that they had reached a settlement with Ms. Warren and her insurer.  Mr. Kohler had sought $2 million from Ms. Warren.  Under the parties'

---

[1] This was not alleged in Aetna's complaint, but rather represented to be true by Defendants.  It is offered here only to provide further background.  The Court's ruling does not rely on it.

4

settlement agreement, Mr. Kohler would receive $7,250.00 and Ms. Kimseu Kohler would receive $137,750.00, for a total of $145,000.00.

Aetna filed this action on January 28, 2011, asserting a claim for equitable relief under section 502(a)(3) of ERISA. In particular, Aetna asks the Court to impose a "constructive trust or equitable lien agreement in favor of the Plan upon settlement proceeds in possession of Defendants." Compl. ¶ 38a.

Defendants have submitted a copy of the docket sheet in the state court action. The docket shows that, on February 3, 2011, Defendants' counsel, on behalf of Defendants and Ms. Warren, filed in the state court action an ex parte motion to interplead funds related to the settlement, to discharge the liability of Ms. Warren and her insurer, and to dismiss Defendants' claims against Ms. Warren. The parties sought to interplead $144,628.56, which was the sum of the following amounts: $6,878.56 held by Mr. Kohler, $37,750.00 held by Ms. Kimseu Kohler and $100,000.00 held by Mercury Insurance. The motion was granted, and $144,628.56 is now deposited with the state court.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim,

5

the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

DISCUSSION

Defendants argue that Aetna's claim must be dismissed because it is not for "appropriate equitable relief."  Alternatively, Defendants assert that this case should be dismissed pursuant to <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976).

I.   Appropriate Equitable Relief

Section 502(a)(3) of ERISA permits a plan fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  To state a claim for equitable relief, a plan must "(1) specifically identify a fund, distinct from the beneficiary's general assets, from which reimbursement will be taken, and (2) specify a particular share to which the plan is entitled." <u>Administrative Comm. for Wal-Mart Stores, Inc. Assocs.' Welfare Plan v. Salazar</u>, 525 F. Supp. 2d 1103, 1111 (D. Ariz. 2007) (citing <u>Sereboff v. Mid-Atl. Med. Servs.</u>, 547 U.S. 356, 362-63 (2006)); see also <u>Cigna Corp. v.</u>

Amara, ___ U.S. ___, 2011 WL 1832824, at *10.

As noted above, Aetna seeks to impose a constructive trust or equitable lien on any settlement proceeds obtained by Defendants. Defendants advance various arguments, which appear to fall into two categories: (1) "Aetna is not 'doing equity,'" Mot. at 4:2, and therefore equitable relief is not appropriate; and (2) Aetna seeks an amount that exceeds the amount to which it is entitled under the Plan.[2]  None of these arguments is availing.

A.   "Doing Equity"

Defendants point to the "the time-honored maxim that '[h]e who seeks equity must do equity.'" In re Gardenhire, 209 F.3d 1145, 1152 n.11 (9th Cir. 2000) (quoting McQuiddy v. Ware, 87 U.S. 14, 19 (1873)).  However, they do not identify any inequitable act by Aetna evident from the face of the pleadings that precludes it from obtaining equitable relief.

First, Defendants contend that the Plan effected a "forced waiver" of their "equitable defenses, including the make whole doctrine." Mot. at 3:15-16, 4:1.  The make-whole doctrine is not an equitable defense.  It is a federal common law rule that provides that "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health & Welfare Benefit Plan, 64 F.3d 1389, 1394 (9th Cir. 1995).  The make-whole doctrine is a federal common-law rule of contract

---

[2] Defendants also contend that public policy justifies dismissing Aetna's claim because it has a chilling effect on "the ability of personal injury claimants to obtain representation." Mot. at 7:10-11.  This argument does not warrant dismissal.

7

interpretation. It is a "gap-filler" that applies only if the contract's subrogation clause is silent with respect to the insured's right to be made whole before the insurer may obtain reimbursement for benefits paid. Thus, the parties may abrogate the make-whole rule by providing that the insurer has "the right of first reimbursement out of any recovery the insured [is] able to obtain, even if [the insured is] not made whole." Id. at 1395.

Here, the "First-Priority Claim" provision of the SPD provides that the Plan is entitled "to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained." Compl., Ex. A, at 41. This language obviates the need to resort to the gap-filling make-whole doctrine. Defendants do not identify any authority that precludes Aetna from seeking equitable remedies simply because Aetna's recovery may exhaust settlement proceeds.[3] District courts, including this one, have permitted insurers to assert equitable claims under section 502(a)(3), notwithstanding the inapplicability of the make-whole doctrine. See, e.g., CGI Techs. & Solutions, Inc. v. Rose, 2011 WL 197772, at *4 (W.D. Wash.) (concluding that plan may assert equitable lien against insured, despite non-operation of make-whole doctrine); Pioneer Title Co. Employee Welfare Benefits Trust v. Tague, 2009 WL 1687966, at *6 (D. Idaho); Bd. of Trustees for Laborers Health &

---

[3] Although Defendants' argument suggests they believe the First-Priority Claim provision to be unconscionable, they cite no authority to support this position.

8

Welfare Trust Fund for N. Cal. v. Hill, 2008 WL 5047705, at *4 (N.D. Cal.). Thus, that Mr. Kohler may not be made whole does not require dismissal of Aetna's claim.

Defendants also argue that Aetna is not "doing equity" because, under the "common fund doctrine," their counsel's right to fees should take priority over Aetna's claim. Under this doctrine, "'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). According to the Supreme Court, the "doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Van Gemert, 444 U.S. at 478. However, the Plan's terms provide that, if a party accepted benefits, that party agreed that the Plan "is not required to participate in or pay court costs or attorneys fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim." Compl., Ex. A, at 41. Thus, the common fund doctrine does not require dismissal of Aetna's claim, in whole or in part.

Finally, Defendants contend that Aetna is not "doing equity" because they and their attorneys may receive nothing from the settlement with Ms. Warren and her insurer if Aetna were to prevail. However, Defendants offer no authority that this result precludes Aetna from pursuing equitable relief.

B.   Amount of Aetna's Entitlement

As noted above, Aetna seeks $147,986.76 for monies it paid to

9

cover Mr. Kohler's medical expenses. Defendants contend that this amount exceeds Aetna's entitlement under the Plan's terms and that its claim should be dismissed in whole or in part.

Defendants cite a portion of the Eleventh Circuit's decision in Popowski v. Parrott, in which that court concluded that, under Sereboff, a plan's ERISA equitable relief claim failed because the plan's terms failed to "specify that recovery come from any identifiable fund or to limit that recovery to any portion thereof." 461 F.3d 1367, 1374 (11th Cir. 2006). There, the plan sought to be reimbursed "in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness." Id. at 1371. Here, under the Plan, Aetna's recovery is limited to "all the amounts the plan has paid and will pay as a result of that injury, illness, or condition, up to and including the full amount the Covered Person receives from any Responsible Party." Compl., Ex. A, at 40. This language sufficiently limits Aetna's claim to an identifiable fund and a portion of it. See, e.g., Pioneer Title, 2009 WL 1687966, at *5; Admin. Cmte. for Wal-Mart Stores, 525 F. Supp. 2d at 1112 n.7. Thus, Popowski does not require dismissal.

Defendants also argue that Aetna may not recover any amount from Ms. Kimseu Kohler because she is not a "Covered Person" as defined by the Plan. However, the Plan provides that a "lien may be enforced against any party who possesses the funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the Covered Person, . . . and/or any other source possessing funds representing the amount of the benefits paid by the plan." Compl., Ex. A, at 41. Aetna alleges that Ms.

10

Kimseu Kohler received amounts under the settlement agreement. The Plan's language and this allegation support Aetna's claim against Ms. Kimseu Kohler.

Finally, Defendants contend that Aetna should recover no more than an amount proportional to what Defendants received in the settlement in relation to what they valued Mr. Kohler's claim to be. They cite Arkansas Department of Health Services v. Ahlborn, 547 U.S. 268 (2006), which concerned a state health agency's lien against a Medicaid recipient's settlement proceeds. However, Defendants identify nothing in the Ahlborn decision that supports dismissal of Aetna's claim, either in whole or in part.

Accordingly, Aetna states a cognizable claim for equitable relief under ERISA.

II. Dismissal under the Colorado River Doctrine

In situations involving the contemporaneous exercise of jurisdiction by different courts over sufficiently parallel actions, a federal court has discretion to stay or dismiss an action based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. Colorado River, 424 U.S. at 817. The two actions need not exactly parallel each other to implicate the Colorado River doctrine; it is enough that the two cases are substantially similar. Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). The mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel. Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698, 700-701 (7th Cir. 1992); see also Interstate Material Corp. v. City of Chicago, 847 F.2d

11

1285, 1288 (7th Cir. 1988) (noting that the requirement is for parallel suits, not identical ones).

The federal district courts have a "virtually unflagging obligation" to exercise their jurisdiction, Moses H. Cone Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983), and should only invoke a stay or dismissal under the Colorado River doctrine in "exceptional circumstances," Colorado River, 424 U.S. at 817. In Colorado River, the Supreme Court announced a balancing test weighing four factors to determine whether sufficiently exceptional circumstances exist: (1) whether either court has assumed jurisdiction over property in dispute; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the concurrent forums obtained jurisdiction. 424 U.S. at 818. The Court stated: "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." Id. at 818-19.

Defendants do not present exceptional circumstances that warrant dismissal under Colorado River or abstention. That the funds at issue are deposited with the state court does not mandate dismissal. Notably, Defendants sought to interplead those funds only after this action was filed.

Accordingly, Defendants' motion to dismiss pursuant to Colorado River is denied.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss. (Docket No. 12.) Aetna's motion to strike portions of

12

Defendants' motion to dismiss is DENIED as moot.  (Docket No. 17.)

    A case management conference will held on July 12, 2011 at 2:00 p.m.

    IT IS SO ORDERED.

Dated: 5/23/2011

*(signature)*
CLAUDIA WILKEN
United States District Judge