IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, on behalf of LEHMAN BROTHERS HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THOMAS KOHLER and DIANE KIMSEU KOHLER, <br><br> Defendants. | No. C 11-0439 CW <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF ANDREW KLIMENKO (Docket Nos. 35 and 45) |

    Plaintiff Aetna Life Insurance Company, on behalf of Lehman Brothers Holdings, Inc., moves for summary judgment on its claim under section 502(a)(3) of the Employment Retirement Insurance Security Act (ERISA), 29 U.S.C. § 1132(a)(3), to recover funds from Defendants Thomas Kohler and Diane Kimeseu Kohler. Defendants oppose the motion. Aetna also moves to strike portions of a declaration submitted by Defendants in support of their opposition. Having considered the papers submitted by the parties and their oral arguments, the Court GRANTS Aetna's motion for summary judgment and DENIES as moot Aetna's motion to strike.

BACKGROUND

    Aetna is the administrator and fiduciary of the Lehman Brothers Holdings, Inc. Benefit Plan, a self-funded plan governed by ERISA. Ms. Kimseu Kohler was employed by Lehman Brothers and was a participant under the Plan. Mr. Kohler, her husband, was a

covered dependent under the Plan.  In relevant portion, the Summary Plan Description (SPD) provides

> Subrogation
> Immediately upon paying or providing any benefits under this plan, the plan shall be subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to a Covered Person's injury, illness, or condition to the full extent of benefits provided or to be provided by the plan.
>
> Reimbursement
> In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury, illness, or condition, the plan has a right to receive from, and be reimbursed by, the Covered Person for all amounts this plan has paid and will pay as a result of that injury, illness, or condition, up to and including the full amount the Covered Person receives from any Responsible Party.
>
> Constructive Trust
> By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person agrees that if he or she receives any payment from any Responsible Party as a result of an injury, illness, or condition, he or she will serve as a constructive trustee over the funds that constitutes [sic] such payment. Failure to hold such funds in trust will be deemed a breach of the Covered Person's fiduciary duty to the plan.
>
> Lien Rights
> Further, the plan will automatically have a lien to the extent of benefits paid by the plan for the treatment of the illness, injury, or condition for which the Responsible Party is liable. The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise related to the treatment for any illness, injury, or condition for which the plan paid benefits. The lien may be enforced against any party who possesses the funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the Covered Person, the Covered Person's representative or agent; Responsible Party; Responsible Party's

insurer, representative, or agent; and/or any other source possessing funds representing the amount of the benefits paid by the plan.

First-Priority Claim
By accepting benefits (whether the payment of such benefits is made to the Covered Person or made on behalf of the Covered Person to any provider) from the plan, the Covered Person acknowledges that this plan's recovery rights are a first priority claim against all Responsible Parties and are to be paid to the plan before any other claim for the Covered Person's damages. This plan shall be entitled to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained. The plan is not required to participate in or pay court costs or attorneys fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.

Cooperation
The Covered Person shall fully cooperate with the plan's efforts to recover its benefits paid. It is the duty of the Covered Person to notify the plan within 30 days of the date when any notice is given to any party, including an insurance company or attorney, of the Covered Person's intention to pursue or investigate a claim to recover damages or obtain compensation due to injury, illness, or condition sustained by the Covered Person. The Covered Person and his or her agents shall provide all information requested by the plan, the Claims Administrator or its representative including, but not limited to, completing and submitting any applications or other forms or statements as the plan may reasonably request. Failure to provide this information may result in the termination of health benefits for the Covered Person or the institution of court proceedings against the Covered Person.

The Covered Person shall do nothing to prejudice the plan's subrogation or recovery interest or to prejudice the plan's ability to enforce the terms of this plan provision. This includes, but is not limited to, refraining from making any settlement or recovery that attempts to reduce or exclude the full cost of all benefits provided by the plan.

3

Decl. of Kate Mellor in Supp. for Pl.'s Mot. for Summ. J. (Mellor Decl.) ¶ 4, Ex. A, at 40-41.

On July 4, 2008, Defendant Thomas Kohler suffered severe injuries when Lise Warren made an illegal u-turn and hit his motorcycle.  Compl. ¶ 13; Answer ¶ 13; Defs.' Opp. to Pl.'s Mot. for Summ. J. (Opp.) at 2; Decl. of Andrew Klimenko in Supp. of Defs.' Opp. to Pl.'s Mot. for Summ. J. (Klimenko Decl.) ¶ 11, Exs. A-C, G.  As a result of the accident, Mr. Kohler has required extensive medical treatment; he was hospitalized for eleven days, continues to suffer numerous health problems, and will likely undergo additional surgeries in the future.  Opp. at 2; Klimenko Decl. ¶ 11, Exs. C, E, G.  Kohler also suffered lost wages and the loss of his motorcycle.  Klimenko Decl. ¶ 11, Ex. G.  In total, Mr. Kohler's medical expenses were approximately $173,910.32.  Klimenko Decl. ¶ 11, Ex. H.  Aetna paid approximately $146,998.90 to $147,986.76 of these costs;[1] the remainder were paid by another insurer.  Klimenko Decl. ¶ 11, Exs. H, L.

In a letter dated November 11, 2008, the Rawlings Company, LLC, on behalf of Aetna, notified Mr. Kohler of his duty to inform Aetna of any claim he intended to bring based on the July 2008 accident.  Decl. of Denise M. Harris in Supp. of Pl.'s Mot. for

---

[1] Defendants' exhibits provide two different amounts for the medical expenses paid by Aetna on Mr. Kohler's behalf.  Klimenko Decl. ¶ 11, Exs. H, L.  The amounts differ by less than one thousand dollars and both exceed the total amount of the settlement fund at issue in this case.

4

Summ. J. (Harris Decl.) ¶ 3, Ex. A.  Rawlings also informed Mr. Kohler that "if you receive a settlement or other payment from any other insurance company, person, or organization, you may be required to reimburse the health plan benefits provided as a result of the incident."  Id.

In a letter dated June 11, 2009, Rawlings asked Mr. Kohler again whether he had brought a tort claim against the party responsible for the injuries he had suffered and whether he retained a lawyer.  Id.  Rawlings informed Mr. Kohler again of Aetna's right to reimbursement.  Id.  Defendants did not respond, notwithstanding that, on June 24, 2009, they had filed a complaint against Ms. Warren in the California Superior Court for the City and County of San Francisco.  Decl. of Clarissa A. Kang in Supp. of Pl.'s Mot. for Summ. J. (Kang Decl.) ¶ 3, Ex. A.  In a letter dated September 24, 2009, Mercury Insurance Company, Ms. Warren's insurer, informed Rawlings that litigation had begun on Mr. Kohler's claim and that Christopher Dolan was representing Mr. Kohler.  Harris Decl. ¶ 4, Ex. B.  The Dolan Law Firm serves as Defendants' counsel in this case.

In a letter dated September 30, 2009, Rawlings notified Andrew Klimenko of The Dolan Law Firm of Aetna's lien for medical benefits paid on behalf of Mr. Kohler on funds that might be obtained through a settlement with Ms. Warren and her insurer.  Compl. ¶ 18; Answer ¶ 18; Harris Decl. ¶ 5, Ex. C.  On December 9, Defendants responded, asking that Aetna withdraw its lien because

5

Ms. Warren had insufficient policy coverage and personal assets to make Mr. Kohler whole. Compl. ¶ 19; Answer ¶ 19. After Rawlings sent Defendants another letter on January 4, 2010 re-asserting Aetna's right to reimbursement for its payment of medical expenses, Defendants responded on January 7, 2010, reiterating their belief that Aetna could not recover any amount from Mr. Kohler. Compl. ¶¶ 20-21; Answer ¶¶ 20-21; Harris Decl. ¶ 5, Ex. C. On January 15, 2010, Rawlings again sent Defendants a letter explaining the legal basis for Aetna's claim for reimbursement. Compl. ¶ 22; Answer ¶ 22; Harris Decl. ¶ 5, Ex. C.

Defendants claim that, on May 20, 2010, their attorney spoke with Denise Harris of Rawlings and the parties "generally agreed that, given the limited insurance available, the customary three way split would be done in which the lien claimant would get 1/3 of the recovery, the attorneys would receive 1/3, and the client would receive 1/3." Decl. of Shawn R. Miller (Miller Decl.) ¶ 2.[2]

On June 16, 2010, Rawlings sent Defendants documentation of the medical expenses Aetna had paid on behalf of Mr. Kohler and of the Plan's subrogation and reimbursement language. Klimenko Decl.

---

[2] Aetna has submitted a declaration from Denise M. Harris, who attests that "I have never agreed, generally or otherwise, . . . to any settlement offer to resolve Aetna's lien for amount paid in benefits for Ms. Kohler," including "through a three-way split of the settlement amount in which the lien claimant, the attorneys and the Kohlers would each receive one-third of the settlement amount." Suppl. Decl. of Denise M. Harris in Supp. of Pl.'s Mot. for Summ. J. (Suppl. Harris Decl.) ¶ 3. For the purposes of considering Aetna's motion for summary judgment, the Court resolves this factual dispute in favor of Defendants as the non-moving parties.

6

¶¶ 5, 6, Ex. L.  In this correspondence, Rawlings stated that claim reductions were considered on a case-by-case basis and that it would consider a reduction at a future time.  Id.

On June 28, 2010, Defendants informed Rawlings that they had reached a settlement with Ms. Warren and her insurer.  Compl. ¶ 23; Answer ¶ 23; Harris Decl. ¶ 6, Ex. D.  Mr. Kohler had sought $2 million from Ms. Warren.  Compl. ¶ 21; Answer ¶ 21.  Defendants told Rawlings that, under the parties' settlement agreement, Mr. Kohler would receive $7,250 from Ms. Warren.  Compl. ¶¶ 23, 26, Ex. C; Answer ¶¶ 23, 26; Harris Decl. ¶ 6, Ex. D.  Although the letter did not state this, Ms. Kimseu Kohler would receive $137,750 from Ms. Warren.  Compl. ¶¶ 23, 26, Ex. C; Answer ¶¶ 23, 26; Klimenko Decl. ¶ 4, Ex. I.  The total to be recovered by Defendants was $145,000.  Defendants have not presented any evidence that they consulted Aetna regarding the settlement with Ms. Warren prior to entering into it.

Subsequently, Defendants and Aetna participated in a mandatory settlement conference in the underlying state court action to try to resolve the outstanding medical liens.  Klimenko

Decl. ¶ 7; Kang Decl. ¶¶ 5-6.[3]  A settlement to resolve the lien was not reached at that time.  Klimenko Decl. ¶ 7; Kang Decl. ¶¶ 5-6.

Aetna filed this action on January 28, 2011, asserting a claim for equitable relief under section 502(a)(3) of ERISA.  In particular, Aetna asks the Court to impose a "constructive trust or equitable lien agreement in favor of the Plan upon settlement proceeds in possession of Defendants."  Compl. ¶ 38a. Defendants filed a motion to dismiss the complaint, which this Court denied on May 23, 2011.  Order Den. Defs.' Mot. to Dismiss and Den. as Moot Pl.'s Mot. to Strike Portions of Defs.' Mot. to Dismiss.

On September 2, 2011, settlement funds totaling $144,628.56, plus accumulated interest, held by the San Francisco Superior Court in the underlying state court civil action, were deposited into the client trust account for The Dolan Law Firm.[4]  The parties previously stipulated that these funds would be held in trust in The Dolan Law Firm's client trust account pending final

---

[3] Aetna has asked this Court to strike Paragraph 7 of the Declaration of Andrew Klimenko, on the grounds that this paragraph impermissibly sets forth evidence of conduct or statements made during negotiations to compromise and that it impermissibly provides an expert opinion of the typical amount for which an ERISA lien is settled.  Pl.'s Reply to Defs.' Opp. to Mot. for Summ. J. 11-12 (citing Fed. R. Civ. Pro. 408, 702).  Because this Court grants Aetna's motion for summary judgment notwithstanding this declaration, Aetna's motion to strike is DENIED as moot.

[4] With Plaintiff's consent, Defendants used $371.44 from the settlement funds to satisfy another provider's lien on a portion of the funds.  Klimenko Decl. ¶ 8, Ex. M; Pl.'s Mot. for Summ. J. 3.

8

disposition of this proceeding.  Stipulation and Order Re Deposit of Disputed Funds.

Defendants' attorneys expended $2,396.38 in costs in the state court action in investigating, filing suit, conducting written discovery and depositions, and generally litigating the matter until it was resolved through the settlement agreement. Klimenko Decl. ¶ 3, Ex. K.  Their fee agreement with Defendants was to have allowed them a contingency fee of one-third of the recovery.  Klimenko Decl. ¶ 3, Ex. J.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

## DISCUSSION

Section 502(a)(3) of ERISA permits a plan fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

There is no genuine dispute that Defendants violated the terms of the Plan. Under the terms of the Plan set forth in the SDP, if Defendants "receive[] any payment from any Responsible Party . . . as a result of an injury," Defendants were required to reimburse the Plan "for all amounts this plan has paid and will pay as a result of that injury, . . . up to and including the full amount [they] receive[d] from any Responsible Party." Mellor Decl. ¶ 4, Ex. A, at 40. Further, Defendants were required to "fully cooperate with the plan's efforts to recover its benefits paid" and "to notify the plan of [their] intention to pursue or investigate a claim to recover damages or obtain compensation" based on Mr. Kohler's injuries within thirty days thereof. Id. at 40-41. Defendants do not dispute that they received $145,000 as settlement of their claims related to Mr. Kohler's accident with Ms. Warren, that Aetna paid more than this amount toward treatment of Mr. Kohler's injuries, or that they failed to notify Aetna of

10

their lawsuit against Ms. Warren. Further, Defendants structured their settlement agreement with Ms. Warren to allocate the bulk of the money to Ms. Kimseu Kohler and a small amount to Mr. Kohler in a transparent attempt to circumvent Aetna's right to recover treatment costs, in violation of their duty to cooperate with Aetna.

Aetna meets the requirements set forth by the Supreme Court's holding in Sereboff v. Mid-Atl. Med. Servs., 547 U.S. 356 (2006), to demonstrate that equitable relief is appropriate to redress these violations. In Sereboff, the Court held that to support a claim for equitable relief, a plan must "(1) specifically identify a fund, distinct from the beneficiary's general assets, from which reimbursement will be taken, and (2) specify a particular share to which the plan is entitled." Administrative Comm. for Wal-Mart Stores, Inc. Assocs.' Welfare Plan v. Salazar, 525 F. Supp. 2d 1103, 1111 (D. Ariz. 2007) (citing Sereboff, 547 U.S. at 362-63). The Plan at issue here clearly identifies the fund that is distinct from the beneficiary's assets. See Mellor Decl. ¶ 4, Ex. A, at 40-41 ("any recovery whether by settlement, judgment, or otherwise related to treatment for any illness, injury, or condition for which the plan paid benefits," including "any and all settlements or judgments, even those designated as pain and suffering, non-economic damages, and/or general damages only"). Aetna seeks money obtained in a settlement between Defendants and Ms. Warren, which is currently held in a client trust account

11

maintained by Defendants' attorneys and is distinct from Defendants' assets.  The Plan also identifies the particular share to which the Plan is entitled.  See Mellor Decl. ¶ 4, Ex. A, at 40 ("all amounts this plan has paid and will pay as a result of [the] injury, illness, or condition").  Aetna seeks here to recover the entire settlement fund, an amount slightly less than the total that it expended on Mr. Kohler's medical expenses.  The Supreme Court has found similar language to fulfill these requirement. See Sereboff, 547 U.S. at 364 (finding equitable relief appropriate where the plan specified it was entitled to "[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)" in the amount of "that portion of the total recovery which is due [Mid Atlantic] for benefits paid").

The Eleventh Circuit's decision in Popowski v. Parrott, upon which Defendants rely to argue that Aetna cannot seek to recover the entire fund, is not to the contrary.  461 F.3d 1367 (11th Cir. 2006). In that decision, the court concluded that, under Sereboff, a plan's ERISA equitable relief claim failed because the plan's terms failed to "limit recovery to a specific portion of a particular fund."  Id. at 1374.  Here, the Plan does limit Aetna's claim to a specific portion of an identifiable fund.  Thus, Popowski does not support the existence of an issue of material fact.

Defendants cite several Ninth Circuit cases to argue that the imposition of a constructive trust is available under section

12

502(a)(3) only if Aetna establishes fraud or wrong-doing by Defendants. Defs.' Opp. to Pl.'s Mot. for Summ. J. at 7-9 (citing <u>Carpenters H & W Trust v. Vonderharr</u>, 384 F. 3d 667, 672-73 (9th Cir. 2004); <u>Reynolds Metals v. Ellis</u>, 202 F. 3d 1246, 1249 (9th Cir. 2000); <u>Cement Masons v. Stone</u>, 197 F. 3d 1003, 1007 (9th Cir. 1999); <u>FMC Medical Plan v. Owens</u>, 122 F. 3d 1258, 1261 (9th Cir. 1997)). However, each of these cases predates the Supreme Court's holding in <u>Sereboff</u>, wherein the Court imposed an equitable lien in circumstances almost identical to those here and did not require a showing of fraud or wrongdoing. See <u>Mairena v. Enterprise Rent-A-Car Hosp. Ins. Plan</u>, 2010 WL 3931098, at *8 (N.D. Cal.) (stating that the Court in <u>Sereboff</u> "did not indicate that a plan fiduciary may only be entitled to this remedy if it is able to show fraud or wrong-doing by the beneficiary"); see also <u>Hitachi High Techs. Am., Inc. v. Bowler</u>, 455 Mass. 261, 269-70 (2009) (holding that, after the cases which had required a showing of fraud or wrongdoing were decided, the law has shifted, because the Court in <u>Sereboff</u> did not require this showing). Further, Aetna has demonstrated that Defendants engaged in fraud or wrongdoing by concealing their state court claim against Ms. Warren from Aetna and by structuring their settlement agreement with Ms. Warren to try to avoid their obligations to reimburse Aetna.

Defendants re-assert nearly verbatim several legal arguments that they raised in their motion to dismiss and that the Court

13

rejected at that time.  Defendants have not raised any genuine issues of material fact relevant to these arguments, which fail for the same reasons that the Court previously explained in its Order Denying Defendants' Motion to Dismiss.

First, Defendants contend Aetna is "not doing equity," because the Plan effected a "forced waiver" of their "equitable defenses, including the make whole doctrine."  Opp. at 7.  As explained in this Court's earlier Order, the make-whole doctrine is not an equitable defense, but is instead a federal common law rule of contract interpretation that serves as "gap-filler" that applies only if the contract's subrogation clause is silent with respect to the insured's right to be made whole before the insurer may obtain reimbursement for benefits paid.  Here, the undisputed facts establish that the "First-Priority Claim" provision of the SPD provides that the Plan is entitled "to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained."  Mellor Decl. ¶ 4, Ex. A, at 41.  This language obviates the need to resort to the gap-filling make-whole doctrine.  Applying federal common law to override the Plan's express and controlling terms would frustrate ERISA's "repeatedly emphasized purpose to protect contractually defined benefits." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148

14

(1985). Defendants do not identify any authority that precludes Aetna from seeking equitable remedies simply because Aetna's recovery would exhaust settlement proceeds. Thus, that Defendants may not be made whole or may not recover any settlement proceeds does not create a dispute of material fact.

Defendants also argue that Aetna is not "doing equity" because, under the "common fund doctrine," their counsel's right to fees should take priority over Aetna's claim. Under this doctrine, "'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). However, the Plan's terms provide that, if a party accepted benefits, that party agreed that the Plan "is not required to participate in or pay court costs or attorneys fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim." Mellor Decl. ¶ 4, Ex. A, at 41. Defendants acknowledge that they hired their attorney to pursue their damage claim in state court. Opp. at 6. Thus, their attorneys' fees are covered by this term of the Plan and the common fund doctrine does not interfere with Aetna's right to recovery.

While the Court recognizes that Mr. Kohler has suffered serious and tragic injuries, the Court cannot conclude that the

15

balancing of equities in this case requires application of the make whole doctrine or any other equitable principle to defeat the Plan's unambiguous reimbursement provisions.  Denying Aetna its right to reimbursement would harm other plan members and beneficiaries by reducing the funds available to pay their present and future claims and damaging the Plan's financial viability.  See Zurich Amer. Ins. Co. v. O'Hara, Ross & Pines LLC, 604 F.3d 1232, 1237-38 (11th Cir. 2010).  Moreover, the record demonstrates that Defendants engaged in bad faith conduct by refusing to involve Aetna in the resolution of their claim with Ms. Warren and structuring their settlement with her in a transparent attempt to preclude Aetna from exercising its right to reimbursement.  Thus, any inequity in this case would derive from allowing Defendants to take benefits from the Plan, settle with Ms. Warren in bad faith and then invoke common law principles to justify refusing to follow their contractual obligations toward Aetna.  See Ryan v. Fed. Express Corp., 78 F.3d 123, 127-28 (3d Cir. 1996).

Defendants also argue that Aetna may not recover any amount from Ms. Kimseu Kohler because she is not a "Covered Person" as defined by the Plan.  However, the Plan provides that a "lien may be enforced against any party who possesses the funds or proceeds representing the amount of benefits paid by the plan including, but not limited to, the Covered Person, . . . and/or any other source possessing funds representing the amount of the benefits paid by the plan."  Mellor Decl. ¶ 4, Ex. A, at 41.  Ms. Kimseu

16

Kohler received amounts under the settlement agreement, as a result of the traffic accident and injuries to Mr. Kohler. Klimenko Decl. ¶ 11, Ex. I.  Thus, there is no genuine issue of fact as to Aetna's right to recover from Ms. Kimseu Kohler.

Defendants contend that Aetna should recover no more than an amount proportional to what Defendants received in the settlement in relation to what they valued Mr. Kohler's claim to be.  They cite Arkansas Department of Health Services v. Ahlborn, 547 U.S. 268 (2006), which concerned a state health agency's lien against a Medicaid recipient's settlement proceeds.  However, Defendants identify nothing in the Ahlborn decision that creates an issue of material fact or otherwise undermines Aetna's claim.

Defendants also contend that Aetna should be precluded from recovery because Aetna seeks to recover "amounts in excess of the out-of-pocket maximums allowed per year pursuant to the SPD," which Defendants argue violates the terms of the SPD.  Opp. at 11.  However, the SPD states that the maximum amount Aetna may recover is the amount that the Plan paid for the covered person's medical treatment, not the out-of-pocket maximum, which is the maximum amount a covered person must pay for medical treatment himself before the Plan pays the full cost of medical treatment.  Mellor Decl. ¶ 4, Ex. A, at 40.  This argument does not create a genuine issue of material fact and does not prevent Aetna's recovery as a matter of law.

17

Defendants further argue that the Plan's reimbursement provisions are obscure and made to appear unimportant, and that this violates 29 CFR § 2520.102-2(b), which states, "Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant." However, Defendants cite no authority that applies this subsection to reimbursement provisions, and there is no dispute as to whether Aetna paid the plan benefits to which Mr. Kohler was entitled. Further, the provisions at issue are printed in the same size and font as other parts of the SPD and are not made to appear unimportant. Mellor Decl. ¶ 4, Ex. A, at 40-41. Thus, this argument does not prevent Aetna's recovery as a matter of law.

CONCLUSION

For the foregoing reasons, the Court GRANTS Aetna's Motion for Summary Judgment (Docket No. 35) and DENIES AS MOOT Aetna's Motion to Strike Portions of the Declaration of Andrew Klimenko (Docket No. 45). Aetna is entitled to the imposition of a constructive trust and equitable lien on the settlement funds recovered by Defendants from Ms. Warren totaling $144,628.56, plus accumulated interest, which are currently held in the client trust account for The Dolan Law Firm, and of which the Plan is the rightful owner. Defendants are directed to turn over these funds to Aetna on behalf of the Plan in compliance with the terms set

forth in the Stipulation and Order Regarding Deposit of Disputed Funds (Docket No. 34).

Aetna may file a motion for attorneys' fees and costs within fourteen days of entry of judgment.  As the successful party in this action, Aetna is entitled to move to recover the reasonable attorneys' fees and costs it has incurred in prosecuting this action, the amount of which shall be determined by post-judgment motion.  29 U.S.C. § 1132(g)(1).  Pursuant to Civil Local Rule 54-5, the parties are ordered to meet and confer regarding Aetna's motion for attorneys' fees within fourteen days of entry of judgment.

IT IS SO ORDERED.

Dated:  **11/2/2011**

CLAUDIA WILKEN
United States District Judge